# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REJEANA SILLA,  )
      Plaintiff, )
)
v. ) Civil Action No. 17-1393
)
ONE THREE FIVE, INC., doing business as ) Magistrate Judge Robert C. Mitchell
BLUSH, *et al.* )
      Defendants. )

## **OPINION**

Presently pending before the Court is a second motion to dismiss the *pro se* amended complaint (ECF No. 16), with brief in support (ECF No. 16-1), filed by defendants, One Three Five, Inc., doing business as, Blush Gentleman's Club (Blush), and Albert Bortz (Bortz), collectively, Defendants. For the reasons that follow, the Court will grant Defendants' motion as to Count IV and deny the motion in all other respects.

**Factual and Procedural History**

Plaintiff ReJeana Silla (Silla) was hired by Bortz as an exotic dancer in 2005. (ECF No. 13, ¶18). As a dancer, Silla worked an average of 4-6 days per week, often in excess of 40 hours. (Id. at ¶¶ 22-24). In addition to dancing at Blush, Silla would travel to perform at other clubs nation-wide, and was expected to promote Blush at other events. (Id. at ¶¶ 19-21). Silla was not paid by Defendants; rather, she kept her earnings each shift, out of which she was required to pay house fees, DJ fees, and other "tip outs." (Id. at ¶¶ 23, 27, 30). Defendants also received from Blush dancers a percentage of all credit card sales, a percentage of tips applied to those credit card sales, and a portion of any income earned from VIP rooms and private dances. (Id. at ¶¶ 28-29).

On November 23, 2015, following a job suspension, and months of alleged harassment and defamation culminating in a delusional episode during which she alleges she was sexually assaulted by a former Blush employee, Silla was admitted to Western Psychiatric Hospital, where she remained for 12 days. (Id. at ¶¶ 37-49). While in the hospital, Silla was visited by Bortz's wife, Sabrina, who had Silla sign a release form authorizing Defendants to access her medical records, including the results of a drug test. (Id. at ¶ 50). Upon her discharge, Silla returned to work at Blush; however, after a few days she contacted Bortz and indicated that she was feeling overwhelmed and requested a few weeks off of work. (Id. at ¶ 51). Bortz approved this break. (Id.)

At some point in early January of 2016, Silla contacted Bortz to negotiate her return to work. (Id. at ¶ 53). As a condition of her continued employment, Bortz asked Silla to authorize release of her mental health records to Bortz. (Id.) Silla obliged; however, upon returning to work, she discovered that Bortz had shared her medical information with other employees and she was subjected to harassment by other dancers and Blush's general manager. (Id. at ¶ 54).

On February 7, 2016, Silla was informed by Blush's general manager that Defendants were terminating her employment on the basis that "they couldn't have her work there anymore because she was hearing voices." (Id. at ¶ 55). Silla denied those accusations. (Id.) The following week, Silla spoke to Bortz who confirmed Silla's firing and refused to discuss with her the possibility of rehiring. (Id. at 57).

On April 19, 2017, Silla attempted to discuss the situation with Bortz in person, but was denied entry to Blush. (Id. at 58). That same day, Silla filed an initial complaint with the Pennsylvania Human Relations Commission (PHRC). (Id. at 59). On July 6, 2017, Silla filed a formal complaint for discrimination with the Pennsylvania Equal Employment Opportunity

Commission (EEOC) and the PHRC. (Id. at 60). The EEOC issued Silla a right to sue letter on July 31, 2017 (ECF No. 1-1). On October 27, 2017, Silla, acting *pro se*, filed her original complaint. (ECF No. 1). On December 27, 2017, Defendants filed a motion to dismiss (ECF No. 3), and a brief in support thereof. (ECF No. 4). In response, Silla filed an amended complaint, alleging that her termination was in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq*.; Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. 1981, *et seq*.; the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*.; the Pennsylvania Minimum Wage Act (PMWA), 43 P.S. § 333.101, *et seq*.; and the Pennsylvania Wage Payment & Collection Law (WPCL), 43 P.S. § 260.1, *et seq*. (ECF No. 13). Silla also raised a number of state court claims, including invasion of privacy, breach of contract, fraud, unjust enrichment, and negligence. (Id.) In light of this filing, the Court terminated Defendants' motion. On February 9, 2018, Defendants filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 16), along with a brief in support (ECF No. 17). Silla has filed a brief in opposition (ECF No. 19).

In their motion, Defendants argue that (1) the entirety of the complaint as it is asserted against Bortz in his individual capacity should be dismissed because Silla has failed to assert facts sufficient to pierce the corporate veil; (2) Counts I, II, III, VI, and VII should be dismissed because Silla has failed to prove that Defendants qualify as "employers" under either the ADA, or Title VII; (3) Count IV should be dismissed because Silla has failed to state a claim under Title III of the ADA; (4) Count X should be dismissed because Silla was at no time "employed" by Defendants as that term is defined by the FLSA or the PMWA; (5) Silla's execution of medical record releases precludes her invasion of privacy claim (Count V); (6) Counts VIII and IX (in which Silla asserts state court claims for wrongful discharge and fraud, respectively) should be dismissed because no

valid employment contract existed between the parties; (7) Silla fails to state a plausible claim for relief with respect to her allegations of unjust enrichment (Count XI); and (8) Silla has failed to set forth a viable claim to sustain her allegations of negligence (Count XII). (ECF No. 16-1).

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. The parties have consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c). (ECF No. 7, 9).

**Standard of Review**

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); *see also, e.g.*, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court opinions in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) and, more recently, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), have shifted pleading standards from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss. With the Supreme Court instruction in mind, the Court of Appeals for the Third Circuit has outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim. First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." Iqbal, 129 S.Ct. at 1950. That is, a complaint must do more than allege the entitlement to relief; its facts must show such an entitlement. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Finally, as Silla has filed her complaint *pro se*, we must liberally construe her pleadings, and we will "apply the applicable law, irrespective of whether a pro se

litigant has mentioned it by name." Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247–48 (3d Cir.1999).

**Discussion**

    I.    <u>*Piercing the Corporate Veil*</u>

Defendants first ask this Court to dismiss all claims filed against Bortz in his individual capacity on the basis that Silla has failed to allege facts sufficient to support piercing the corporate veil. (ECF No. 16-1, pg. 3-4). Although Silla's *pro se* amended complaint fails to delineate which causes of action she seeks to bring against which defendant, the federal and state statutes upon which she relies limit the liability of certain classes of defendants. Accordingly, Defendants' argument is irrelevant and, as detailed *infra*., there is no need to conduct a piercing analysis with respect to any of Silla's claims.

        a.    <u>*Individual Liability Under the ADA and Title VII (Counts I, II, III, IV, VI, and VII)*</u>

Individuals cannot be held personally liable under either the ADA or Title VII, thus the Court presumes that Counts I, II, III, IV, VI, and VII are asserted against Blush alone, as any claims against Bortz in his individual capacity under those statutes cannot proceed. See Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 178 (3d Cir. 2002), *citing* EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1279–82 (7th Cir. 1995) (holding that held that an individual owner and sole shareholder of corporation not liable as an individual under the ADA); Clarke v. Whitney, 907 F.Supp. 893 (E.D.Pa. 1995) (the court held that a principal shareholder and officer not individually liable under the ADA); Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d

5

1061, 1077 (3d Cir. 1996) (finding that individual employees cannot be held liable under Title VII); Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir. 1997) (same).

### b. *Individual Liability Under the FLSA and PMWA (Count X)*

"The FLSA imposes individual liability on 'any person acting directly or indirectly in the interest of an employer in relation to an employee....' Aside from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA." Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 153 (3d Cir. 2014), *citing* 29 U.S.C. § 203(d). Given the substantially similar language of the PMWA, this Court sees no reason to construe that statute differently. Accordingly, Silla's amended complaint will be interpreted to raise FLSA and PMWA claims against each separate defendant.

### c. *Individual Liability for State Torts (Counts V, VIII, IX, XI, and XII)*

Finally, with respect to Silla's state court claims, this Court is mindful that "[a] corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort." Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir.1978). A fair reading of the amended complaint demonstrates that Silla's tort claims are meant to be asserted against Bortz individually.

Accordingly, because the language of the statues at issue governs the applicable liability analysis, the doctrine of piercing the corporate veil is irrelevant.

### II. *Silla's Discrimination Claims Against Blush*

In Counts I through IV, VI, and VII of her amended complaint, Silla asserts discrimination claims against Blush under Titles I and III of the ADA, and Title VII. For ease of disposition, this Court's analysis begins with Silla's Title III claim.

### a. *The Applicability of ADA Title III to the Instant Facts*

Defendants argue that Title III of the ADA, which prohibits disability discrimination in places of public accommodation, is inapplicable here; thus, the claim deriving therefrom should be dismissed. This Court agrees.

The ADA sets forth a general rule that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To state a claim under Title III of the ADA, a plaintiff must show "(1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator." Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 542–43 (W.D. Pa. 2013) (citations omitted). Discrimination refers to

> (i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

7

>    (iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;
>
>    (iv) a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable; and
>
>    (v) where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.

42 U.S.C. § 12182(b)(2)(A).

In her amended complaint, Silla avers that the actions of Blush's employees on April 19, 2017 rise to the level of an ADA violation because "after [Defendants] fired [her] due to a disability, she was not even permitted to be on the premises of the club." (ECF No. 13, ¶ 112). However, these allegations fail to plead discrimination as defined above and are thus are insufficient to prove a plausible claim for relief under Title III. Accordingly, Count IV will be dismissed in its entirety. Iqbal, 129 S.Ct. at 1950.

### b. *Whether Blush Qualifies as an "Employer" Under Title I of the ADA and/or Title VII*

Defendants argue that, because Blush fails to meet the statutory definition of "employer," the claims arising under Title I of the ADA or Title VII must be dismissed. (ECF No. 16-1, pg. 5, 7). Both statutes provide that, in general and subject to exceptions not relevant here, "[t]he term "employer" means a person engaged in an industry affecting commerce who has 15 or more

employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person[.]" 42 U.S.C. § 12111(5)(A); 42 U.S.C. § 2000e(b). In her amended complaint, Silla avers that Blush's employment practices satisfy this definition. (ECF No. 13, ¶¶ 77-79, 125-26). Accepting as true these well-pled allegations, this Court finds the same sufficient to demonstrate a "plausible claim for relief" against Blush with respect to Silla's Title I and Title VII claims. Iqbal, 129 S.Ct. at 1950. Thus, Counts I, II, III, VI and VII will be permitted to proceed against Blush.

### III. *Silla's FLSA and PMWA Claims Against Both Defendants*

Defendants next argue that Silla was at no time an "employee" of Blush as that term is statutorily defined, but rather operated as an independent contractor; thus, the claims brought pursuant to the FLSA and PMWA should be dismissed. (ECF No. 16-1, pg. 9-11).

The FLSA defines the term "employee" as "any individual employed by an employer," and clarifies the term "employ" as "to suffer or permit to work." 29 U.S.C. §§ 203(d), (g). Consistent with the broad definition of "employee" used by the FLSA, the Third Circuit has set forth an "economic realities" test for district courts tasked with determining whether a worker is an employee or an independent contractor.[1] See Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1382–83 (3d Cir. 1985). The following factors should be considered:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence

---

[1] As Defendants correctly note, federal economic realities test is the appropriate standard under which this Court should analyze Silla's accompanying PMWA clam. (ECF No. 16-1, pg. 9); Com., Dep't of Labor & Indus., Bureau of Labor Law Compliance v. Stuber, 822 A.2d 870, 873 (Pa. Cmwlth. 2003).

of the working relationship; [and] 6) whether the service rendered is an integral part
of the alleged employer's business.

Id. (citations omitted). "Neither the presence nor absence of any particular factor is dispositive and [ ] courts should examine the circumstances of the whole activity, and should consider whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service." Id. at 1382 (citations and quotation marks omitted).

In her amended complaint, Silla sets forth the following facts to support her contention that she is an employee of Blush for the purposes of the FLSA: (1) Blush had complete control over the nature of her work, including the fees she was required to charge, her wardrobe, hours, scheduling and promotional requirements, the place of work, the method of payment for services provided to patrons, and the amount of tip outs she was required to pay; (2) the position of exotic dancer is skill-dependent and the opportunity for profit or loss directly correlates to each dancer's skill level; and (3) the service rendered by an exotic dancer is the primary business of Blush. (ECF No. 13, ¶ 229).

In response, Defendants argue that Silla's amended complaint is insufficient to prove she was an employee because she

> fails to offer any facts that she filed tax returns claiming that she was an "employee" of the Defendants, that the Defendants supplied her with any equipment, dancewear, costumes or the like, that the Defendants taught the Plaintiff how to perform or controlled when and where she performed, or, that the Defendants issued her a paycheck or provided her with a W-2.

(ECF No. 16-1, pg. 10). However, mindful of the Iqbal standard set forth above, this Court finds Silla's amended complaint alleges enough facts to state a claim for relief under the FLSA, against both Defendants, that is plausible on its face.[2]

---

[2] It is worth noting that other courts applying the economic realities test under similar facts have arrived at the same conclusion. See e.g, Verma v. 3001 Castor, Inc., 2014 WL 2957453, at *10

Moreover, to the extent that Defendants rely on Plaintiff's alleged admission that she "was and considered herself to be an 'independent contractor,'" (ECF No. 16-1, pg. 10), this fact is not dispositive of whether or not she qualifies as an employee under the statute. See Safarian v. Am. DG Energy Inc., 622 F. App'x 149, 152 (3d Cir. 2015) (collecting cases). Accordingly, Count X may proceed against both Defendants.

IV.     *Silla's State Court Claims Against Bortz*

In addition to her federal claims, Silla raises five state court tort claims against Bortz.

    a.     Invasion of Privacy Claim (Count V)

Defendants argue that Silla's execution of authorizations permitting Bortz to access her medical records belies Silla's invasion of privacy claim. (ECF No. 16-1, pg. 6-7). The Pennsylvania Supreme Court has explained:

> To state a cause of action for the tort of invasion of privacy in Pennsylvania, a plaintiff must aver that there was an intentional intrusion on the seclusion of their private concerns which was substantially and highly offensive to a reasonable person, and aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of normal sensibilities.

Pro Golf Manufacturing, Inc. v. Tribune Review Newspaper Company, 809 A.2d 243, 247 (Pa. 2002) (citations omitted).

In her amended complaint, Silla admits that she signed the authorizations, but did so under "duress" as Bortz had conditioned her future employment on access to her medical records, which

---

(E.D. Pa. June 30, 2014); Thompson v. Linda and A., Inc., 779 F. Supp. 2d 139, 151 (D.D.C. 2011); Harrell v. Diamond A Entm't, Inc., 992 F. Supp. 1343, 1354 (M.D. Fla. 1997); Reich v. Priba Corp., 890 F. Supp. 586, 594 (N.D. Tex. 1995); Reich v. Circle C. Investments, Inc., 998 F.2d 324, 329 (5th Cir. 1993).

is impermissible under the ADA. (ECF No. 13, ¶ 116-18). Further, Silla contends that Bortz disseminated the information contained in the records, leading to harassment by other Blush employees and that, despite access to the record of her clean drug test, Bortz spread false allegations that she was using drugs. (Id. at ¶¶ 119, 121). After consideration of the allegations contained in the amended complaint, this Court is convinced that, at this juncture, Silla has stated a plausible claim for relief as required by Iqbal, and Silla's invasion of privacy claim against Bortz will be allowed to proceed.

b. Breach of Contract and Fraud (Counts VIII, IX)

Defendants argue that Counts VIII and IX of the amended complaint should be dismissed because no verbal employment contract existed between the parties. (ECF No. 16-1, pg. 8, 11-12). "Under Pennsylvania law, it is [the plaintiff's] burden to establish the existence of an oral contract by 'clear and precise' evidence. A contract is enforceable only if both parties manifested an intent to be bound, it is supported on both sides by consideration, and its terms are sufficiently definite." Gorwara v. AEL Indus., Inc., 784 F. Supp. 239, 242 (E.D. Pa. 1992) (citations omitted).

In her amended complaint, Silla alleges that a years-long verbal contract existed between the parties, under which Silla agreed to perform as an exotic dancer and work a set schedule at Blush in exchange for providing Bortz with tip outs for use of his facilities and marketing. (ECF No. 13, ¶¶ 170-73, 195, 251). Further, she avers that Bortz made a verbal promise of continued employment. (Id. at 173, 193). Having determined that Silla has, at this juncture, pled facts sufficient to support her allegation that she was employed by Blush prior to her termination, this Court similarly finds that Silla has alleged a plausible claim for relief for breach of contract and fraud against Bortz on the basis of an ongoing verbal contract.

### c. Unjust Enrichment (Count XI)

Unjust enrichment results when a party inequitably retains benefits conferred by an opposing party. Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa. Super. Ct. 1995). The elements necessary to show unjust enrichment under Pennsylvania law are: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008), *quoting* Limbach Co. LLC. v. City of Philadelphia, 905 A.2d 567, 575 (Pa. Cmwlth. 2006).

Defendants argue that Silla's amended complaint is insufficient to establish a claim for unjust enrichment because (1) the claim runs contrary to Silla's prior arguments that an oral employment contract existed between Bortz and Silla and (2) the facts as pled fail to meet the elements of the claim. (ECF No. 16-1, pg. 11-12).

With respect to the first argument, this Court notes that "[a] claim for unjust enrichment, wherein the law implies a quasi-contract which requires the defendant to pay to [p]laintiff the value of the benefit conferred, does not exist where there is a written contract between the parties." Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999). However, the practice of alternate pleading, which is permissible under Rule 8(d)(2) of the Federal Rules of Civil Procedure, means that "[t]he mere existence of a written contract between parties does not bar an unjust enrichment claim." PPG Industries, Inc. v. Generon IGS, Inc., 760 F.Supp.2d 520, 526 (W.D. Pa. 2011) (citation omitted).

13

With respect to Defendant's second argument, this Court notes that Silla's unjust enrichment claim relies on purported violations of the FLSA and PMWA: that Bortz has been unjustly enriched by retaining a large portion of the income earned by dancers at Blush, including portions of tips placed on credit cards, and it is inequitable, and potentially illegal, for Bortz to retain those funds without paying dancers for providing the benefit. (ECF No. 13, ¶ 251). While some Courts have held that the FLSA preempts state unjust enrichment claims of this nature,[3] the Third Circuit has not ruled definitively on the matter. Again, recognizing that Rule 8 expressly permits parties to plead claims in the alternative, Silla's claim will be permitted to proceed at this stage.

### d. Negligence (Count XII)

Finally, Defendants argue that Silla's claim of negligence should be dismissed because Bortz neither owed a duty to Silla or breached any alleged duty to her. (ECF No. 16-1, pg. 13). Defendants also take issue with Silla's additional non-specific allegations of negligence. (ECF No. 13, ¶¶ 258, 270, 271).

This Court agrees with Defendants that, although Silla makes a number of assertions of alleged negligence under different legal theories, the only one that is fully developed in her amended complaint arises from the incident that occurred on November 22, 2015. (Id. at ¶¶ 261-69). Accordingly, all non-specific allegations of negligence will be dismissed as undeveloped.

In her remaining claim Silla argues that Bortz is liable for the negligence of the unnamed general manager of Blush who failed to exercise reasonable care in forcing Silla to leave the club

---

[3] See e.g., Gutwirth v. Woodford Cedar Run Wildlife Refuge, 38 F. Supp. 3d 485, 489, 491 (D.N.J. 2014).

with an unnamed former employee who later sexually and physically assaulted her. (Id. at ¶ 267). Silla avers that she informed the manager that (1) she was having a medical episode and requested police assistance; (2) the manager refused to call for help and instead asked her to leave with a former employee; (3) the former employee had been "drinking at [Blush] for hours" prior to escorting Silla out of the club and later assaulted her; and (4) she told the general manager that she did not want to leave the club with the unnamed former employee. (Id).

The Restatement of Torts provides that

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>
> > (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> > (ii) is using a chattel of the master, and
>
> (b) the master
>
> > (i) knows or has reason to know that he has the ability to control his servant, and
> > (ii) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317 (1965). As the Pennsylvania Supreme Court has explained in order "[t]o fasten liability on an employer under Section 317, it must be shown that the employer knew or, in the exercise of ordinary care, should have known of the necessity for exercising control of his employee." Dempsey v. Walso Bureau, Inc., 246 A.2d 418, 422 (Pa. 1968). Accepting the well-pled allegations in the amended complaint as true, this Court finds that, at this juncture, this cause of action will be permitted to proceed against Bortz.

**Conclusion**

For the foregoing reasons, this Court will grant Defendants' motion to dismiss the *pro se* amended complaint as to Count IV. The remainder of the motion is denied in its entirety. An appropriate order follows.


Dated: June 26, 2018                                    /s/  *Robert C. Mitchell*

                                                                               ROBERT C. MITCHELL
                                                                                United States Magistrate Judge

Cc: record counsel via CM-ECF

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REJEANA SILLA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-1393 |
| | ) | |
| ONE THREE FIVE, INC., doing business as | ) | Magistrate Judge Robert C. Mitchell |
| BLUSH, *et al.* | ) | |
|     Defendants. | ) | |

## **ORDER**

AND NOW, to-wit, this 26th day of June, 2018, for the reasons stated in the Opinion filed contemporaneously herewith, it is hereby ORDERED that Defendants' Second Motion to Dismiss *Pro Se* Amended Complaint (ECF No. 16) is GRANTED IN PART and DENIED IN PART as follows:

    a. The motion to dismiss is GRANTED as to Silla's ADA Title III claim (Count IV); and

    b. The motion to dismiss is DENIED as to all other Counts.


                                                    /s/ *Robert C. Mitchell*
                                                    ROBERT C. MITCHELL
                                                    United States Magistrate Judge

Cc: record counsel via CM-ECF