**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| REJEANA SILLA | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| ONE THREE FIVE INC. D/B/A BLUSH | ) |
| AND ALBERT BORTZ | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

***Jury Trial Demanded***

CIVIL ACTION NO. 17-1393

Electronically Filed

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**BACKGROUND**

Plaintiff, Rejeana Silla ("Plaintiff") seeks to advance claims that One Three Five Inc. ("135") and business owner Albert Bortz ("Bortz" or collectively "Defendants") to recover from the Defendant's for alleged violations, including but not limited to, the Americans with Disabilities Act, Title I and III, 42 USC §§, 12101, *et seq.,* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000, *et seq.,* Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101 et seq., and Pennsylvania common law claims sounding in contract or tort.

For the following reasons, Defendants submit that even if Plaintiff's allegations are taken as true, the Amended Complaint, in its entirety fails as a matter of law. Specifically, any and all claims as raised by the Plaintiff are precluded by the terms and conditions of a Settlement Agreement and as such, the Amended Complaint, must be dismissed in its entirety, with prejudice.

## A.     STANDARD OF PLEADING

### 1.     Rule 12(b)6 Standard

In *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court opined that a complaint may be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Co. of Allegheny*, 515 F. 3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Under *Twombly*, and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), a claim for relief under Rule 12(b)(6) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

A court considering a Rule 12(b)(6) motion accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F. 3d 256, 260 (3d Cir., 2006)). However, a court will not accept bold assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d. Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 N. 8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d. Cir. 2000). Accordingly, a plaintiff must plead sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkinson v. New Media Tech. Charter Sch., Inc.*, 522 F. 3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F. 3d at 224).

A trial court has discretion to address evidence outside of the complaint when ruling on a motion to dismiss. ***Pryor v. National Collegiate Athletic Ass'n***, 288 F.3d 548, 559-60 (3d Cir.

2002). Moreover, "simply attaching exhibits to a complaint does not necessarily make that complaint amenable only to summary judgment or foreclose a court from considering those exhibits in its Rule 12(b)(6) ruling." ***Id.***

Ordinarily, "the court is not permitted to look at matters outside the record," and "if such matters are considered, the FRCP 12(b)(6) motion to dismiss is, by the express terms of FRCP 12(b), converted into a motion for summary judgment." ***Id.*** However, the court is permitted to consider documents which are attached to or submitted with the complaint. ***Id.*** Importantly for the purposes of the instant case, the Third Circuit has held that "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." ***Id.*** Moreover, "[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim." ***Id.***

In the instant action, the Plaintiff makes specific reference to both the complaint and settlement reached by the parties, in ***Correll v. One Three Five, Inc.***, at Docket No. 2:13-cv-01610, United States District Court for the Western District of Pennsylvania. See Amended Complaint at Paragraphs 198, 226. The Settlement Agreement is a matter of public record, whose authenticity cannot be disputed. Moreover, the settlement agreement and the original complaint are central to the claim, given that they are material to whether or not Plaintiff can legally maintain a claim against the Defendant. See, ***Green v. Joy Cone Co.***, 278 F. Supp. 2d 526, 530-31 (W.D. Pa. 2003) (finding that considering a consent to physical examination form produced by defense was permissible given that it was alluded to in the complaint). Moreover, a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. ***Brogan v. Montgomery Twp.***, 2015 WL 4273331,

at *2 (E.D. Pa. July 15, 2015) citing, **Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.**, 998 F.2d 1192, 1196 (3d Cir.1993).

Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied. **Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.**, 998 F.2d 1192, 1196 (3d Cir. 1993)(citations omitted).

## ARGUMENT

### I.   PLAINTIFF'S AMENDED COMPLAINT FAILS IN ITS ENTIRETY, AS A MATTER OF LAW.

Plaintiff's Amended Complaint, seeks to advance claims seeking to recover for Defendant's alleged violations of the Americans with Disabilities Act, Title I and III, 42 USC §§, 12101, *et seq.,* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000, *et seq.,* Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101 et seq., and Pennsylvania common law claims of breach of contract and/or unjust enrichment. Plaintiff in her Amended Complaint claims that the Defendants improperly classified its dancers as independent contractors instead of employees, and as a result, she was deprived of the mandated minimum wage for all hours worked and premium overtime compensation for all hours worked in excess of 40 hours a week. The Plaintiff further claims that she was forced to improperly share a percentage of her gratuities with the Defendants and forced to reimburse the Defendants for ordinary business expenses. Plaintiff's Amended Complaint claims that (i) she is entitled to be paid mandated minimum wages for all hours worked; (ii) she is entitled to premium overtime compensation for all hours worked in excess of 40 hours a week; and (iii) that all gratuities earned by her, is her property.

The Plaintiff in her Amended Complaint has further alleged that she was hired as a "dancer" in 2005 by Bortz and that over the course of a ten (10) year period, "built a dancing

4

career." (See Amended Complaint, Paragraph 19).  In addition to dancing at 135, she, together with other dancers, traveled frequently throughout the country at other clubs, similar to 135. (See Amended Complaint, Paragraph 19-21) often working in excess of forty (40) hours per week. The Plaintiff further contends that 135 and/or Bortz, was an employer for purposes of the FLSA and/or PMWA, as the said defendants, directed and controlled the Plaintiff, insofar as the "when", "where" and "how often" that she "danced".  Moreover, that as a result of the acts alleged in her Amended Complaint the Plaintiff's dancing career was "ruined" and she was denied future earning potential.

In her Amended Complaint, the Plaintiff appears to try to rely on previously settled litigation in support of her economic claims.  The action, *Correll v. One Three Five, Inc.*, at Docket No. 2:13-cv-01610, United States District Court for the Western District of Pennsylvania. In that action, Katisha Correll, on behalf of herself and all others dancers similarly situated, filed a complaint, *inter alia*, in which she raised claims including but not limited to alleged violations of the FLSA, the PMWA and common law claims. Said action included "all current and former dancers" who worked for 135, within the statutory period covered by the complaint.  135 denied said allegations.  On or about February 4, 2014, the Court conditionally certified the litigation as a collective action and issued notices to the putative collective action members, including but not limited to the Plaintiff, who performed at 135 as dancers, since November 8, 2010. The docket in *Correll v. One Three Five, Inc.* is a matter of public record and incorporated herein by reference thereto.

On or about December 4, 2015, a Joint Motion to Preliminary Approve Class and Collective Action Settlement, was filed with this Court. Said Motion included a Settlement Agreement ("Settlement Agreement"). A true and correct copy of the Motion *(without Exhibits)*

and the Settlement Agreement, are attached hereto, marked as Exhibits "A" and "B" respectively and incorporated herein.

Said Settlement Agreement defined the "defendant" or "blush" referred to 135 (the named defendant), Blush and its "present and former parent companies, subsidiaries, affiliated entities, shareholders, owners, officers, directors, employees, agents, attorneys, insurers, successors and assigns, included but not limited to Blush." See Exhibit "B". Said Settlement Agreement, further defined a "claimant" as a "Class Member who submits a materially complete timely Claim Form, or is the Named Plaintiff, or is an FLSA Opt-In Plaintiff." See Exhibit "B". Moreover, the Settlement Agreement defined a "class member" as "all persons who meet one or both of the definitions of FLSA Collective or the State Law Class, as defined herein." See Exhibit "B".

In addition, anyone who wished to be excluded from the Settlement Agreement "must submit a Request for Exclusion" and a "class member" who wished to object to the Settlement Agreement must have done so, within any time frame as established by the Court. See Exhibit "B" hereto. The period of time for which the Settlement Agreement applied included the period from November 8, 2010, through the date of the Settlement Agreement or December 4, 2015. See Exhibit "B" hereto. Similarly, the "class members" included all "dancers" or performers who did not otherwise validly exclude themselves from the Settlement Agreement were nevertheless subject to the provisions of the Settlement Agreement. All "class members" were identified and provided notices, in the form as attached to the Settlement Agreement. See Exhibit "A" hereto.

The Settlement Agreement further released any and all "applicable state and local law", together with any and all "federal law claims" against the within Defendants, known or unknown, anticipated or unanticipated, that were asserted, arise out of or are related to the subject matter of that litigation. See Exhibit "B" at Paragraphs 40 and 41. Furthermore, upon final approval, the

"class members" were deemed to have unconditionally, irrevocably, completely and forever release and discharge the within Defendants from any and all state or federal law claims, upon any theory of law or equity past, present or future.  See Exhibit "B", Section VIII, Release by the Settlement Class, Paragraphs 86 through 87.  Said Settlement Agreement included, but was not limited to any and all claims based on the Civil Rights Act of 1886, 1871, 1964 and 1991; 42 U.S.C. Section 1981, the FLSA, the ADA, the PMWA and any other statutory, common law or public policy claim, as it may exist at the local, state or federal level. See Exhibit "B", Section VIII, Release by the Settlement Class, Paragraph 86.

By Order dated June 29, 2016, this Honorable Court noted that "Class members who are not claimants and who did not file requests to exclude themselves from this settlement are hereby deemed to have released the state law claims as set forth in ¶85 of the Settlement Agreement." A true and correct copy of said Order of Court is attached hereto, marked as Exhibit "C" and made a part hereof.  In addition, said Order of Court further noted that "no objection to the settlement have been filed…"  See Exhibit "C". The Court upon consideration of the same, dismissed the action with prejudice.  See Exhibit "C".

The Settlement Agreement further released any and all "applicable state and local law", together with any and all "federal law claims" against 135, known or unknown, anticipated or unanticipated, that were asserted, arise out of or are related to the subject matter of that litigation. See Exhibit "B" at Paragraphs 40 and 41. Furthermore, upon final approval, the "class members" were deemed to have unconditionally, irrevocably, completely and forever release and discharge 135 and/or "Blush" from any and all state or federal law claims, upon any theory of law or equity past, present or future.  Said Settlement Agreement included, but was not limited to any and all claims based on the Civil Rights Act of 1886, 1871, 1964 and 1991; 42 U.S.C. Section 1981, the

FLSA, the ADA, the PMWA and any other statutory, common law or public policy claim, as it may exist at the local, state or federal level. Finally, the Settlement Agreement provides that Pennsylvania law shall apply and govern any issues which might arise. See Exhibit "B" at Section XXII, Applicable Law, Paragraph 103.

Finally, the Court in its Order of Court dated June 29, 2016, specifically noted that noted that "Class members who are not claimants and who did not file requests to exclude themselves from this settlement are hereby deemed to have released the state law claims as set forth in ¶85 of the Settlement Agreement." See Exhibit "C" and made a part hereof.  In addition, said Order of Court further noted that "no objection to the settlement have been filed…"  See Exhibit "C". The Court upon consideration of the same, dismissed the action with prejudice.  See Exhibit "C".

As set forth in the Plaintiff's Amended Complaint, she has alleged to have "worked" at 135 and/or for Bortz from 2005 through 2016. See Amended Complaint, Factual Background. The Plaintiff was therefore a "class member" subject to the Settlement Agreement who had danced or performed, for or on behalf of the Defendants, from November 8, 2010, through the date of the Settlement Agreement or December 4, 2015.  See Exhibit "B".

The within Plaintiff, was a "Class Member" as defined by the Settlement Agreement, was identified on a "Class Member Chart for Settlement Distribution" and failed to file an objection or to "opt-out" of the Settlement Agreement.  In addition, most if not all of the Plaintiff's claims, as against the Defendants, based on the averments in the Amended Complaint, occurred during the period of time covered by the Settlement Agreement, including but not limited to any and all events up through and including December 2015.  In light of the same, Plaintiff's Amended Complaint fails, in its entirety, as a matter of law.

"It is well-established that a release is the giving up or the abandoning of a claim or right to the person against whom the claim exists or the right is to be enforced or exercised ...." *Complaint of Bankers Trust Co.*, 752 F.2d 874, 883 (3d Cir.1984). Although federal courts have "the power to apply federal common law to interpret releases" of federal claims, courts are also "free to apply a rule of state law." *Three Rivers Motor Co. v. Ford Motor Co.*, 522 F.2d 885, 892 (3d Cir. 1975). In determining whether to apply state law or adopt a federal rule to interpret the release of a federal claim, "I must review the following factors: 'the need for a common federal rule, the extent to which the transaction in question fits within the normal course of activities regularly governed by state law, and the possibility of the state rule frustrating the operation of the federal statutory scheme.' " *Pocopson Indus., Inc. v. Hudson United Bank*, No. 05–6173, 2006 WL 2092578, at *8 (E.D.Pa. July 26, 2006) (O'Neill, J.) (citing *Three Rivers*, 522 F.2d at 892). In this case, "the Court finds that the factors weigh in favor of interpreting the release under state law, particularly in the present case where the parties' agreement includes a choice of law provision." *Phillis v. Harrisburg Sch. Dist.*, No. 07–1728, 2010 WL 1390663, at *5 (M.D.Pa. Mar.31, 2010) (citing *Huber v. Taylor,* 469 F.3d 67, 80 (3d Cir.2006)); see also *Three Rivers*, 522 F.2d at 891 ("State law customarily governs the field of contracts and it is to state rather than federal law that private parties are likely to refer when formulating the terms of a contractual release.").

In Pennsylvania, the effect of a release is to be determined by the ordinary meaning of its language. *Republic Ins. Co. v. Paul Davis Systems of Pittsburgh South, Inc.*, 670 A.2d 614, 615 (Pa. 1995); *Buttermore v. Aliquippa Hospital*, 561 A.2d 733, 735 (Pa. 1989). Parties with possible claims may settle their differences upon such terms as are suitable to them. *Buttermore*, 561 A.2d at 735. As articulated by the Pennsylvania Supreme Court:

Parties with possible claims may settle their differences upon such terms as are suitable to them. They may agree for reasons of their own that they will not sue each other, or anyone else, for the event in question. When the parties to a release agree not to sue each other or anyone else for a given event, this can effect a discharge of others who have not contributed consideration for the release. This is true even if the language of the release is general, releasing, for example, "any and all other persons" rather than specifically naming the persons released. However improvident the release may be or subsequently prove to be for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case. If such a release can be nullified or circumvented, then every written release and every written agreement of any kind, no matter how clear and pertinent, can be set aside whenever one of the parties changes its mind or the injured party receives an inadequate settlement.

*Taylor v. Solberg*, 778 A.2d 664, 667–68 (Pa. 2001).

Here, the Settlement Agreement unambiguously released the claims against the Defendants that are asserted in the instant action. Specifically, the Settlement Agreement provides that in exchange for monetary compensation, the Plaintiff, as a "Class Member" released, "defendant" or "blush" referred to 135 (the named defendant), Blush and its "present and former parent companies, subsidiaries, affiliated entities, shareholders, owners, officers, directors, employees, agents, attorneys, insurers, successors and assigns, included but not limited to Blush."  See Exhibit "B".

Moreover, the Settlement Agreement further provided that the Plaintiff, as a "Class Member" agreed to dismiss with prejudice all claims for damages, costs and fees against Defendants which they have made or which they could have made in connection with the action captioned *Correll v. One Three Five, Inc.*, at Docket No. 2:13-cv-01610, United States District Court for the Western District of Pennsylvania ("captioned action").

The Settlement Agreement further released any and all "applicable state and local law", together with any and all "federal law claims" against the defendants, known or unknown, anticipated or unanticipated, that were asserted, arise out of or are related to the subject matter of

that litigation. See Exhibit "B" at Paragraphs 40 and 41.  Furthermore, upon final approval, the "class members" were deemed to have unconditionally, irrevocably, completely and forever release and discharge the defendants from any and all state or federal law claims, upon any theory of law or equity past, present or future.  See Exhibit "B", Section VIII, Release by the Settlement Class, Paragraphs 86 through 87. Said Settlement Agreement included, but was not limited to any and all claims based on the Civil Rights Act of 1886, 1871, 1964 and 1991; 42 U.S.C. Section 1981, the FLSA, the ADA, the PMWA and any other statutory, common law or public policy claim, as it may exist at the local, state or federal level. See Exhibit "B", Section VIII, Release by the Settlement Class, Paragraph 86. Finally, the Settlement Agreement provided that Pennsylvania law shall apply and govern any issues which might arise. See Exhibit "B" at Section XXII, Applicable Law, Paragraph 103.

As such, the Plaintiff in her own right, and on behalf of her heirs, executors, administrators and/or assigns, agreed to accept the terms and conditions of the Settlement Agreement as full settlement and satisfaction of any and all actions, causes of actions, agreements, judgments, claims, damages, loss of services, costs, expenses of litigation and attorneys' fees arising in any way from the captioned litigation.

Based on the clear terms of the Settlement Agreement, the Plaintiff released all claims which she advanced or could have advanced against the within Defendants. As a result, the Amended Complaint in its entirety, should be dismissed, with prejudice.

In addition, although the Third Circuit has instructed that a district court must permit a curative amendment if a claim is vulnerable to a 12(b)(6) dismissal, a court need not grant leave to amend if amendment would be inequitable or futile. See, ***Phillips v. Cnty. of Allegheny***, 515 F.3d 224, 236 (3d.Cir.2008). Because the Settlement Agreement bars Plaintiff's claims against the

Defendants, *in totem*, amendment of these claims would be futile. Thus, the claims against the Defendants must be dismissed, with prejudice.

## II.      CONCLUSION

For the foregoing reasons, Defendants One Three Five, Inc. and Albert Bortz respectfully request that this Honorable Court dismiss the Plaintiff, Rejeana Silla's Amended Complaint in its entirety, with prejudice.

Respectfully Submitted,

 */s/ Jonathan M. Kamin*
JONATHAN M. KAMIN
PA. I.D. NO.  81958
jonathank@gkgattorneys.com
DEBORAH R. ERBSTEIN
PA. I.D. NO. 86470
derbstein@gkgattorneys.com

GOLDBERG, KAMIN & GARVIN, LLP
1806 FRICK BUILDING
437 GRANT STREET
PITTSBURGH, PA 15219
(412) 281-1119

Dated: October 1, 2018                       Attorney for Defendants
                                             ONE THREE FIVE INC. D/B/A BLUSH
                                             AND ALBERT BORTZ

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by email delivery, this the 1st day of October, 2018, on the following:

Ms. Rejeana Silla
rejeanamsilla@gmail.com
430 Taylor Street
Pittsburgh, PA  15224

/s/ Deborah R. Erbstein
JONATHAN M. KAMIN, ESQUIRE
DEBORAH R. ERBSTEIN, ESQUIRE

jonathank@gkgattorneys.com
PA I.D. NO.  81958

derbstein@gkgattorneys.com
PA I.D. NO.  86470

GOLDBERG, KAMIN & GARVIN, LLP
1806 FRICK BUILDING
437 GRANT STREET
PITTSBURGH, PA  15219

P (412) 281-1119