IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REJEANA SILLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 17-1393 |
| ONE THREE FIVE, INC. | ) |
| doing business as | ) |
| BLUSH, and ALBERT BORTZ | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM OPINION</u>**

Pro se Plaintiff Rejeana Silla ("Silla") began performing as an exotic dancer at One Three Five, Inc., ("Blush") in 2005 under the tutelage of Blush's sole shareholder Albert Bortz ("Bortz"), (collectively "Defendants"). In November of 2015, Silla was hospitalized due to a stress induced psychotic break. Three months later, Defendants told her that she could no longer dance at Blush. This lawsuit followed.

Presently pending before the Court are the parties' cross motions for summary judgment. (ECF Nos. 96, 99.) For the reasons that follow, both motions will be denied.[1]

I. **PROCEDURAL HISTORY**

Silla commenced this action in October 2017. (ECF No. 1.) After Defendants moved to dismiss her claims (ECF No. 3), she amended her Complaint. (ECF No. 13 ("Am. Compl.").) In

---

[1] Under the Federal Magistrate Judges Act, "[u]pon consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1). Consent of all parties to a case gives the magistrate judge full "authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003). Both parties consented to the magistrate judge's jurisdiction. (ECF Nos. 7, 9.)

the Amended Complaint, Silla alleged that Defendants had violated Title I and III of the Americans with Disabilities Act ("ADA"), 42 U.S.C.§ 12101 *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*; the Equal Pay Act, 29 U.S.C. § 206 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; and the Pennsylvania Minimum Wage Act ("PMWA"). (*Id.*) Silla also asserted a number of state law claims, including invasion of privacy, breach of contract, fraud, unjust enrichment, and negligence. (*Id.*) Defendants responded by renewing their motion to dismiss. (ECF No. 16.)

In a Memorandum Opinion and Order dated June 26, 2018, that addressed the motion to dismiss, Magistrate Judge Mitchell explained that although Silla had failed to delineate which causes of action she sought to bring against specific Defendants, her claims under the ADA and Title VII (Counts I, II, III, IV, VI and VII) were properly asserted against Blush alone because an individual cannot be held personally liable under those statutes. (ECF No. 21 at 5.) With respect to the alleged violations of the FLSA and the PMWA (Count X), the Court interpreted Silla's Amended Complaint as asserting claims against both Blush and Bortz. (*Id.* at 6.) Finally, the Court construed Silla's remaining state law claims (Counts V, VIII, IX, XI and XII) as having been asserted against only Bortz. (*Id.*) The Court then granted Defendants' motion only with respect to Silla's claim under Title III of the ADA (Count IV). (*Id.* at 7–8.)

After Defendants filed their Answer (ECF No. 22) to the Amended Complaint, they again moved to dismiss Silla's claims based on a settlement agreement that had been reached in a prior lawsuit. (ECF No. 30.) Because resolution of the issues raised by Defendants required the Court to go beyond the allegations of the Amended Complaint, the Court construed their motion as a motion for summary judgment (ECF No. 34.) After considering the parties' positions, the Court granted judgment in Defendants' favor with respect to the alleged Equal Pay Act violations (Count VI), quid pro quo sexual harassment under Title VII (Count VII), fraud (Count IX), FLSA and

PMWA violations (Count X) and unjust enrichment (Count XI). (ECF No. 60 at 12.) Defendants' motion was denied with respect to claims under Title I of the ADA (Counts I, II, III); harassment and hostile work environment claims under Title VII (Count VI); and state law claims of invasion of privacy (Count V), breach of contract (Count VIII), and negligence (Count XII). (*Id.*)

During the discovery phase of this action, the Court entered a protective order limiting discovery to events occurring after February of 2013, which was three years prior to Silla's purported date of termination. (ECF No. 63.)

After the close of discovery, the parties filed cross-motions for summary judgment. (ECF Nos. 96, 99.) These motions have been fully briefed (ECF Nos. 97, 100, 109, 110, 113, 114), and are ripe for disposition.

## II. RELEVANT FACTUAL BACKGROUND[2]

Silla has performed as an exotic dancer at Blush and other establishments since 2005. (Defendants' Statement of Facts ("Defs.' SOF"), ECF No. 107 ¶¶ 1, 2; Silla Aff. ¶ 4.) In 2014, Silla participated in a drug treatment program for opiate addiction. (Defs.' SOF ¶ 17; ECF No. 98-2 ("Silla Dep.") at 153.) At that time, Bortz required Silla to provide him with her drug test results and to have someone from the program speak to him. (Defs.' SOF ¶ 23; Plaintiff's Statement of Facts ("Pl.'s SOF"), ECF No. 101 ¶ 31; ECF No. 104-2 ("Bortz Dep.") at 26–27, 152–53.) Plaintiff resumed working at Blush after completing the treatment program. (Defs.' SOF ¶ 25.)

---

[2] The facts are taken from the evidence of record that is either undisputed by the parties or not adequately disputed on the record. Disputed facts are viewed in the light most favorable to the nonmoving party in accordance with *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Of note, the averments in the Amended Complaint will be construed as creating disputed facts because Silla has filed an affidavit affirming, under penalty of perjury, that those averments are based on her personal knowledge and are true and correct. (ECF 19-2 ("Silla Aff.") ¶¶ 2, 25.)

In November 2015, Silla was hospitalized for twelve days due to a stress induced psychotic break ("November Incident"). (Am. Compl. ¶¶ 43, 49.) The facts surrounding the November Incident are disputed. Silla claims that she experienced a mental breakdown and Blush's general manager, Mike Bagnato ("Bagnato"), forced her to leave with former Blush employee Kris Myers ("Myers"), who then sexually assaulted her, all of which culminated in her hospitalization. (Defs.' SOF ¶ 31; Silla Aff. ¶ 22.) Defendants deny forcing Silla to leave with Myers. (Defs.' SOF ¶ 32.)

What is not disputed, however, is that Bortz and his wife visited Silla at the hospital. (Answer ¶ 50.) Silla's hospital records reflect that she had a "manic episode" and a "bipolar disorder" diagnosis was considered. (ECF No. 114, Exh. 4[3]; ECF No. 114-6 at 4.) According to her hospital records, Silla agreed to release her medical information, including drug test results and treatment records, to Bortz. (Plaintiff's Response to Defs.' SOF ("Pl.'s Response"), ECF No. 111 ¶ 23; ECF No. 114-6 at 3.) A licensed social worker assigned to Silla at the hospital informed Bortz that her drug test results were negative and also discussed Silla's treatment plan with him. (ECF No. 114-6 at 4.) Bortz was "supportive of [Silla] due to negative results" and told the social worker that Silla was "welcome to return to employment in the future and [that he] plans to support her going to [outpatient] treatment and maintaining medication regimen." (*Id.*; ECF No. 111 at 13–17 (Plaintiff's counter SOF ("Pl.'s CSOF") ¶ 22.)

Upon her discharge from the hospital in early December 2015, Silla returned to work at Blush but began to feel overwhelmed because of comments made by Bagnato and other dancers. (Am. Compl. ¶ 51; Silla Aff. ¶ 3.) Silla testified that Bagnato told her that she was not making money like she used to. (Silla Dep. at 237.) Additionally, the record reflects that other dancers at

---

[3] This exhibit was hand delivered to the Court and was not filed on the docket as it is Silla's unredacted medical records.

4

Blush made fun of Silla for being hospitalized and referred to her as "crazy." (ECF No. 104-17 ("Cecere Dep.") at 8, 18, 20; ECF No. 104-16 ("Flaviano Dep.") at 40.) With Bortz's approval, Silla took a two-week break at the end of December 2015. (Am. Compl. ¶ 51; Answer ¶ 51.)

In January 2016, Silla contacted Bortz to negotiate the terms of her return to Blush. (Am. Compl. ¶ 53.) According to Silla, Bortz asked her to authorize release of her mental health records to him as a condition of her continued employment. (*Id.*) Defendants admit that Bortz asked Silla for documentation showing that she was both mentally and physically healthy. (Answer ¶ 53.) Silla obliged; however, upon returning to work, she discovered that Bortz had shared her medical information with other employees and they continued to make fun of her. (Am Compl. ¶¶ 54, 119, 121.) According to Silla, other dancers would state in front of her and Blush customers that Bagnato was calling her crazy and did not want her there. (*Id.* ¶ 54.)

Bagnato took Silla off the schedule in February 2016. (*Id.* ¶ 55.) Silla claims that Bagnato told her that "they couldn't have her work there anymore because she was hearing voices" and that she was "crazy." (*Id.*) Bagnato testified that he never called Silla crazy and took her off the schedule because of her disruptive behavior with respect to the November Incident. (ECF No.104-9 ("Bagnato Dep.") at 20–21.) The following week, Silla spoke to Bortz who, according to Silla, confirmed her termination, told her that "they weren't the crazy ones," and refused to discuss with her the possibility of rehiring. (Am. Compl. ¶ 57.) Silla has not returned to Blush since then.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue of material fact that precludes summary judgment. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

This standard does not change when the parties cross-move for summary judgment. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). When both parties move for summary judgment, "'[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Id.* (quoting 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (3d ed. 2016)).

"[P]*ro se* litigants are held to a lesser pleading standard than other parties." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). "A document filed pro se is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established.").

## IV. DISCUSSION

Silla asserts that Blush violated the ADA by discharging her based on her disability (Count I), discriminating against her for having a "record of" a disability or being "regarded as disabled" (Count II), and requiring her to release her mental health records as a condition of her continued employment (Count III). Silla also advances a sexual harassment and a hostile work environment claim against Blush under Title VII (Count VI). Finally, Silla alleges state law claims of invasion of privacy (Count V), breach of contract (Count VIII), and negligence (Count XII) against Bortz.

The Court will begin its analysis with Silla's claims against Blush under the federal statutes followed by a discussion of her state law claims against Bortz. Finally, the Court will address Silla's request to strike Defendants' affirmative defenses.

A. **Silla's claims against Blush under the federal anti-discrimination statutes**[4]

As an initial matter, the Court notes that the two federal statutes on which Silla relies, Title I of the ADA and Title VII, are limited to restricting discrimination in an employment relationship. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. Similarly, Title VII states that "[i]t shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

Therefore, a critical issue in this case is whether Silla's relationship with Blush was that of an employee as opposed to some other legal relationship, including that of an independent contractor. In seeking summary judgment, Defendants do not argue that Silla is an independent contractor. In her opening brief, however, Silla asserts that while she was classified by Defendants as an independent contractor, she was an employee of Blush under the Third Circuit's "economic realities" test.

Under the "economic realities" test, in order to determine whether a worker is an employee or an independent contractor, courts in this circuit consider the following six factors:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed;(2) the alleged employee's opportunity for profit or

---

[4] Silla's opening brief contains a section entitled "Plaintiff has alleged that she is entitled to relief, as a matter of law, pursuant to 42 U.S.C.A Section 1981 – equal protection from unlawful discrimination including independent contractors and discrimination in the breaches or the making of contracts." (ECF No. 100 at 16.) Silla's Amended Complaint does not contain this cause of action. Therefore, the Court need not address this claim.

> loss depending upon [her] managerial skill; (3) the alleged employee's investment in equipment or materials required for [her] task, or [her] employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; [and] (6) whether the service rendered is an integral part of the alleged employer's business.

*Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229 (3d Cir. 2019) (quoting *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991)). The Third Circuit has explained that "no one factor is dispositive. Rather, a court should consider them together in the 'circumstances of the whole activity' to determine whether the worker is 'dependent upon the business to which [she] render[s] service' or is, 'as a matter of economic reality,' operating an independent business for herself." *Id.* at 230 (quoting *Selker Bros.*, 949 F.2d at 1293).

The Court previously ruled that Silla alleged sufficient facts in her Amended Complaint to satisfy the "economic realities" test.[5] (ECF No. 21 at 10.) In seeking dismissal of Silla's FLSA and PMWA claims at the motion to dismiss stage, Defendants had argued that Silla was at no time an "employee" of Blush as that term is statutorily defined, but rather, operated as an independent contractor. The Court applied the "economic realities" test and rejected Defendants' argument based on the following allegations in Silla's Amended Complaint:

> (1) Blush had complete control over the nature of her work, including the fees she was required to charge, her wardrobe, hours, scheduling and promotional requirements, the place of work, the method of payment for services provided to patrons, and the amount of tip outs she was required to pay; (2) the position of exotic dancer is skill-dependent and the opportunity for profit or loss directly correlates to each dancer's skill level; and (3) the service rendered by an exotic dancer is the primary business of Blush.

---

[5] Although the Court subsequently dismissed Silla's FLSA and PMWA claims based on a settlement agreement in a prior lawsuit (ECF No. 60), there was no judicial determination in the earlier case regarding Blush's employment relationship with the plaintiffs, who had alleged that Blush's alleged pay practices with respect to its dancers violated the FLSA and the PMWA. At any rate, as discussed herein, the test utilized to determine employment status under the ADA and Title VII is different than the test applicable to the FLSA.

(*Id.*) These factual allegations remain largely undisputed and, to the extent that Defendants rely on deposition testimony to dispute any of these allegations, that merely creates a triable issue of material fact that must be resolved at trial. (*See supra* n.2.)

Even more fundamentally, however, both Silla and Defendants rely upon the wrong test. It is well-established that the common law "master-servant" test, not the "economic realities" test used in FLSA cases, governs whether an individual is an employee under either the ADA or Title VII.[6] *Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 448 (2003); *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 (3d Cir. 2015). Indeed, "[t]he definition of 'employee' in the FLSA is of 'striking breadth' and 'cover[s] some parties who might not qualify as such under a strict application of traditional agency law principles.'" *Faush*, 808 F.3d at 214 (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 326 (1992)). Therefore, the "economic realities" test used in FLSA cases is broader than the common law "master-servant" test. *See Yue Yu v. McGrath*, 597 F. App'x 62, 66 (3d Cir. 2014) ("[I]f [Defendant] was not [Plaintiff's] employer

---

[6] In order to determine whether a master-servant relationship exists under the common law of agency, courts in this circuit consider several relevant factors, including:

> [T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Faush*, 808 F.3d at 214 (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 323–24 (1992)). These "factors assist in 'drawing a line between independent contractors and employees' hired by a given entity." *Faush*, at 215 (quoting *Clackamas*, 538 U.S. at 445 n.5). The Third Circuit has instructed courts undertaking this inquiry to focus on "which entity paid the employees' salaries, hired and fired them, and had control over their daily employment activities." *Id.* at 214 (quoting *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013)).

under the FLSA's more expansive definition, it follows that it was not [Plaintiff's] employer under the narrower common law definition used for Title VII cases.")

Thus, whether Silla is an employee or an independent contractor for purposes of this lawsuit is a disputed issue of material fact. This is a sufficient basis to deny the parties' cross motions for summary judgment with respect to Silla's claims under the ADA and Title VII. However, as explained below, even assuming that Silla is an independent contractor, summary judgment is not warranted in favor of either party.

### ADA Claims (Count I, II, and III)

"[T]he ADA prohibits covered employers from discriminating against qualified individuals with disabilities because of their disabilities . . ." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 191 (3d Cir. 2009) (citing 42 U.S.C. § 12112(a)). Additionally, medical examinations or inquires of employees relating to disabilities are prohibited unless they are job-related. 42 U.S.C § 12112(d)(4); 29 C.F.R. § 1630.14(b)(3).

1. Defendants are not entitled to summary judgment on Silla's ADA claims

According to Silla, Bagnato, Blush's general manager, called her crazy after her hospitalization and told her that she could not work at Blush anymore because she was hearing voices. Silla also claims that Bortz, Blush's sole shareholder, refused to discuss the possibility of rehiring her and stated that they were not the crazy ones. In seeking summary judgment on Silla's ADA claims, Defendants contend that Silla is not a qualified individual with a disability because the record is devoid of evidence that either Bagnato or Bortz were aware of any disability, including a mental health disability, at any time that she performed at Blush. (ECF No. 97 at 7, 18–19.)

It is undisputed, however, that Bortz visited Silla at the hospital after the November Incident. Silla's hospital records reflect that a diagnosis of "bipolar disorder" was considered and

that a hospital social worker told Bortz that her drug tests were negative and discussed Silla's treatment plan with him. (ECF No. 114-6 at 4.) Hospital records also reflect that Bortz stated that he intended to be supportive of Silla as she went through the required treatment. (*Id.*) Further, Bortz later obtained her mental health records and asked for documentation from Silla that she was mentally healthy. Therefore, a factfinder could reasonably infer from the evidence of record that Bortz knew that Silla suffered from a mental disability. Moreover, there is sufficient evidence to infer that Bagnato also knew of her mental health issues. Accordingly, the Court rejects Defendants' contention that summary judgment is warranted in favor of Blush on Silla's ADA claims because neither of the relevant decisionmakers were aware of her disability.

Defendants also argue that even if Silla claimed that she suffered from a disability associated with her past opiate addiction, she would not be afforded protection under the ADA. (ECF No. 97 at 8.) This is so, Defendants argue, because a "qualified individual with a disability" does not include an individual who is currently engaged in the illegal use of drugs. (*Id.*) While it is true that Silla participated in and completed a drug treatment program in 2014, Silla has not alleged that she suffers from a disability associated with her past opiate addiction, and the evidence of record sufficiently supports Silla's assertion of a mental health disability.[7]

Accordingly, Defendants' motion for summary judgment will be denied with respect to Silla's ADA claims.

2. Silla is not entitled to summary judgment on her ADA claims

Silla contends that she is entitled to judgment in her favor with respect to her ADA claims because she has established a prima facie case of discrimination. (ECF No. 100 at 14.) In response,

---

[7] The Court also notes that in making this argument, Defendants rely on evidence that is beyond the scope of the Court's protective order, which limited discovery in this case to events occurring three years prior to Silla's purported date of termination.

Defendants offer the same argument that the Court has rejected: that Silla's prima facie case fails because neither Bagnato nor Bortz were aware that she suffered from any disability while performing at Blush. (ECF No. 109 at 6–7.) Silla's motion is unavailing because merely establishing a prima facie case does not entitle Silla to judgment as a matter of law.

Employment discrimination cases in which no direct evidence of discrimination is presented are analyzed under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff bears the burden to prove a prima facie discrimination case by establishing that she "(1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." *McNelis v. Pennsylvania Power & Light Co.*, 867 F.3d 411, 414 (3d Cir. 2017) (quoting *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006)). If a plaintiff meets that burden, the defendant then bears the burden to produce a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts back to the plaintiff to demonstrate that the defendant's purported reason was really pretext for discrimination. *Id.* at 804. Plaintiff can demonstrate pretext "by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Silla has neither furnished the relevant facts nor provided any legal argument in her opening brief that would enable the Court to properly analyze her claims under the *McDonnell Douglas* framework. Moreover, as discussed previously, whether Silla was an employee of Blush is a disputed issue of fact. Therefore, Silla's motion for summary judgment regarding her ADA claims will be denied.

**Title VII Claims (Count VI)**

Title VII provides that it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." *Komis v. Sec'y of United States Dep't of Labor*, 918 F.3d 289, 292 (3d Cir. 2019) (quoting 42 U.S.C. § 2000e-2(a)(1)). To state a claim for relief under Title VII, plaintiffs must show "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Id.* (quoting *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015)).

Title VII also allows employees "to bring claims of a hostile work environment." *Id.* at 293. A hostile work environment is one that is "is permeated with discriminatory intimidation, ridicule, and insult[ ] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). The Third Circuit has explained that "an isolated incident of discrimination (if severe) can suffice to state a claim for harassment." *Castleberry v. STI Grp.*, 863 F.3d 259, 265 (3d Cir. 2017) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 133 (2004)).

1. <u>Defendants are not entitled to summary judgment on Silla's Title VII claims</u>

In seeking summary judgment with respect to Silla's Title VII claims, Defendants contend that Silla "has failed to raise any issues of fact in support of a claim for sexual harassment under Title VII for events that occurred at [Blush], by the management of [Blush], condoned by [Blush] and/or undertaken by Bortz." (ECF No. 97 at 20–21.) In so arguing, however, Defendants fail to address multiple sworn allegations in the Amended Complaint which are corroborated by the deposition testimony of a former Blush dancer, Ms. Flaviano.

14

Silla alleges that employees at Blush made sexually derogatory comments to her. (Am. Compl. ¶ 135.) According to Silla, she reported these incidents to Defendants on multiple occasions. (*Id.*) Ms. Flaviano testified that dancers at Blush were indeed frequently subjected to such treatment by employees at Blush. (Flaviano Dep. at 55–59.) She also stated that such conduct interfered with the dancers' work performance and created an intimidating and abusive work environment that Defendants failed to address. (*See id.*)

As Silla has created genuine issues of material fact that Defendants failed to rebut or address, summary judgment in favor of Blush is not warranted regarding Silla's Title VII claims.

### 2. Silla is not entitled to summary judgment on her Title VII claims

Silla contends that she is entitled to judgment as a matter of law on her Title VII claims because she has established a prima facie case of discrimination. (ECF No. 100 at 14.) But she has neither furnished the relevant facts, nor provided any legal argument in her opening brief that would enable the Court to properly analyze her claims under the *McDonnell Douglas* framework. Therefore, Silla is not entitled to summary judgment on her Title VII claims.

### B. **Silla's state law claims against Bortz**

Based upon a review of the record and the parties' briefing, genuine issues of material fact preclude summary judgment in favor of either party on the state law claims that have been asserted against Bortz.

### 1. Invasion of Privacy Claim (Count V)

Pennsylvania recognizes the tort of "unreasonable intrusion upon the seclusion of another," under the umbrella of invasion of privacy. *Boring v. Google Inc.*, 362 F. App'x 273, 278 (3d Cir. 2010) (quoting *Burger v. Blair Med. Assocs., Inc.*, 964 A.2d 374, 376–77 (2009)). To state this claim, a plaintiff must allege conduct demonstrating "an intentional intrusion upon the seclusion of their private concerns which was substantial and highly offensive to a reasonable person, and

15

aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities." *Id.* at 278–79 (quoting *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 247 (2002)).

Silla has asserted, among other things, that Bortz violated her privacy rights by asking her to release of her mental health records to him as a condition of continued employment. Defendants' position on this contention has evolved over time. In seeking dismissal of this claim under Rule 12(b)(6), Defendants argued that Silla's execution of authorizations permitting Bortz to access her medical record undermines her invasion of privacy claim. (ECF No. 16-1 at 6–7.) In their Answer, Defendants admitted that Bortz asked Silla for documentation evincing that she was mentally and physically healthy. (Answer ¶ 53.) Now, Defendants argue that Silla has failed to allege any facts to support such a claim. (ECF No. 97 at 19.) The Court disagrees.

Silla admits that she signed the authorizations but claims that she did so under "duress" as Bortz conditioned her future employment on access to her mental health records, which is impermissible under the ADA. (Am. Compl. ¶ 116–18.) According to Silla, Bortz disseminated the information contained in those records, leading to harassment by other Blush employees including Bagnato. (*Id.* ¶ 121.) Silla also asserts that despite Bortz's access to the records from her 2014 drug treatment program which reflect that she successfully completed it, Bortz spread false allegations that she was using drugs. (*Id.* ¶ 119.) Defendants do not even address this assertion in moving for summary judgment.

These are sufficient facts to support an invasion of privacy claim against Bortz. Accordingly, Defendants' motion for summary judgment necessarily fails. At the same time, however, because Defendants dispute the facts that Silla has proffered in support of this claim, she likewise is not entitled to judgment in her favor. Bortz testified that he did not require her to prove

her mental stability. (Bortz Dep. at 72.) Similarly, Bagnato testified that he was not aware that Silla had either participated in the drug treatment program in 2014 or had been hospitalized after the November Incident. (Bagnato Dep. at 19, 26.) Moreover, whether Silla authorized the release of her records under duress is also a disputed issue.

Simply put, there are genuine issues of material fact with respect to Silla's invasion of privacy claim. Accordingly, neither party is entitled to summary judgment.

### 2. Breach of contract (Count VIII)

In Pennsylvania, a plaintiff must "establish the existence of an oral contract by 'clear and precise' evidence." *Gorwara v. AEL Indus., Inc.*, 784 F. Supp. 239, 242 (E.D. Pa. 1992) (quoting *Browne v. Maxfield*, 663 F. Supp. 1193, 1197 (E.D. Pa. 1987)). For such a contract to be enforceable, Pennsylvania courts inquire "whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." *Channel Home Centers, Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 298–99 (3d Cir. 1986).

Silla alleges that an oral contract extending over a number of years existed between the parties, pursuant to which she agreed to perform as an exotic dancer and work a set schedule at Blush in exchange for providing Bortz with tip outs for use of his facilities and marketing. (Am. Compl. ¶¶ 170–73, 195, 251.) Further, she also avers that Bortz made a verbal promise of continued work at Blush so long as she provided him with her drug test results and mental health records. (*Id.* ¶¶ 173, 193.) Therefore, according to Silla, Bortz breached the parties' contract by taking her off the schedule at Blush even though she had provided him with the requested records. (*Id.* ¶ 193.) Bortz, however, denies requiring her to prove her mental stability. (Bortz Dep. at 72.)

It is unclear if Silla seeks to enforce a contract that she claims existed over a number of years or the verbal promise of continued work as long as she provided Bortz with her records. Defendants dispute the existence of the alleged agreement that extended over a number of years, and do not address Silla's allegations that Bortz made a verbal promise of continued work at Blush so long as she provided him with her drug test results and mental health records. Moreover, as previously discussed, there are issues regarding whether Silla was an employee or in some other relationship with Bortz which could impact the validity of any alleged oral contract. Finally, neither party addressed the potential applicability of the statute of frauds on Silla's claim. These matters create genuine issues of material fact that preclude summary judgment in either party's favor with respect to Silla's breach of contract claim.

3. <u>Negligence (Count XII)</u>

With respect to the November Incident, Silla claims that Bagnato was negligent in forcing her to leave with Myers, who then sexually assaulted her. Silla seeks to hold Bortz liable for Bagnato's negligence. In moving for dismissal of Silla's negligence claim under Rule 12(b)(6), Defendants previously argued that Bortz neither owed a duty to Silla nor breached any alleged duty. (ECF No. 16-1 at 3.) In rejecting Defendants' motion to dismiss on this issue, however, the Court explained that under Pennsylvania law, in order to prevail on such a claim "it must be shown that the employer knew or, in the exercise of ordinary care, should have known of the necessity for exercising control of his employee." (ECF No. 21 at 21 (quoting *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 422 (Pa. 1968).) The Court therefore found that Silla's negligence claim stated a claim upon which relief may be granted based on the following allegations in the Amended Complaint: Silla had informed Bagnato that "(1) she was having a medical episode and requested police assistance; (2) the manager refused to call for help and instead asked her to leave with

[Myers]; (3) [Myers] had been drinking at [Blush] for hours prior to escorting Silla out of the club and later assaulted her; and (4) she told Bagnato that she did not want to leave the club with [Myers]." (*Id.*)

In seeking summary judgment on this claim, Defendants repeat their earlier argument that Silla has failed to allege any facts of record that they breached any duty of care purportedly owed to her. At the same time, in considering the facts of record and applying the applicable summary judgment standard, the Court notes that there is sworn testimony from Silla as to this conduct. (*See supra* n.2.) Therefore, there are issues of fact that preclude judgment in Defendant's favor.

Silla, too, is not entitled to summary judgment because Defendants deny that Bagnato forced her to leave with Myers. (Defs. SOF ¶ 32.) This creates an issue of fact which must be resolved by the factfinder. Thus, neither party is entitled to summary judgment on Silla's negligence claim.

### C. Silla's Request to Strike Defendants' Affirmative Defenses

Finally, Silla claims that Defendants committed discovery abuses and acts of perjury during various depositions. (ECF No 100 at 19.) She contends that for this reason, the Court should strike all of Defendants' affirmative defenses. (*Id.*) Defendants counter that there has been no hearing or finding that they were untruthful during any deposition that would justify the requested relief. (ECF No. 109 at 25.)

The Court agrees that the relief requested is not appropriate under the circumstances.[8] Silla may make appropriate arguments regarding the viability of Defendants' affirmative defenses in pretrial motions or at trial.

---

[8] While Silla also objects to defense counsel's conduct during Bortz's deposition. (Pl.'s SOF ¶¶ 10, 21, 23, 29), she did not seek relief by filing a motion regarding this conduct.

V.  CONCLUSION

Based upon the foregoing, the parties' cross motions for summary judgment will be denied. Appropriate orders follow.

_____
Patricia L. Dodge
United States Magistrate Judge

October 27, 2020